GRIMES, Chief Justice,
concurring.
The statute we are called upon to construe is section 373.443, Florida Statutes (1987), which reads in pertinent part:[1]
373.443 Immunity from liability. — No action shall be brought against the state or district, or any agents or employees of the state or district, for the recovery of damages caused by the partial or total failure of any dam, impoundment, reservoir, appurtenant work, or works upon the ground that the state or district is liable by virtue of any of the following:
[[Image here]]
(3) Control or regulation of dams, im-poundments, reservoirs, appurtenant work, or works regulated under this chapter.
(4) Measures taken to protect against failure during emergency.
The district court of appeal reasoned that the statute only held water management districts immune from liability “if the permits they grant, the regulations they promulgate, or the control they exercise by reason of their permits, regulations, and orders lead to injuries.” Nanz v. Southwest Florida Water Management Dist., 617 So.2d 735, 736 (Fla. 2d DCA 1993). In view of subsections (3) and (4) of section 373.443, I believe that the immunity also covers the districts’ direct control pf dams, impoundments, reservoirs, and appurtenant work as well as emergency measures to protect against failure.
It may even be that the legislature intended to provide total immunity to the districts. However, as the statute is worded I cannot say that this was fully accomplished. The key to interpreting the statute is the phrase which provides immunity “for the recovery of damages caused by the partial or total failure of any dam, impoundment, reservoir, appurtenant work, or works.” This language appears to grant total immunity for damages caused by a break in the enclosure of water or a release of water caused by an equipment failure regardless of whether there was operational negligence. On the other hand, liability for any damages not caused by a partial or total failure would continue to be determined according to the planning-operational dichotomy under section 768.28, Florida Statutes (1987).[2]
Most of the allegations of the complaint appear directed to damages caused by planning-level decisions of the district, such as opening or closing dams or changing the flow *1089 of waters. However, some of the allegations are susceptible to the interpretation that damages were caused by operational negligence for which the district would not be immune under section 768.28 and by circumstances other than total or partial failure for which the district would not be immune under section 373.443. Therefore, I concur in permitting the ease to proceed beyond the motion stage so as to give Nanz an opportunity to prove a case in which he would be entitled to a recovery.
OVERTON, J., and McDONALD, Senior Justice, concur.

. As noted in the majority opinion, the statute was amended in 1989 to add the words stormwa-ter management system to the list of enumerated items. Contrary to the implication in the majority opinion, I do not believe the addition of these words materially changes the statute because the words “dams, impoundments, reservoirs, and appurtenant work” all relate to a stormwater management system. See § 373.403, Fl.Stat. (1989).

. To illustrate how a district could be held liable for flood damage, consider a scenario in which a district employee charged with the duty of controlling the water level behind a dam fell asleep and permitted the water to overflow. The resulting damages could not be characterized as having been caused by a total or partial failure and the operational negligence would be evident.